## Retail Liquor Dealers Protective Association of Illinois et al., Appellees, v. Charles J. Fleck et al., Appellants.

### Gen. No. 45,220.

Heard in the second division of this court for the first district at the June term, 1950. Opinion filed June 30, 1950. Rehearing denied July 12, 1950. Released for publication July 12, 1950.

IVAN A. ELLIOTT, Attorney General, for appellants; WILLIAM C. WINES, RAYMOND S. SARNOW and JAMES C. MURRAY, Assistant Attorneys General, all of Chicago, of counsel.

HALFPENNY & HAHN, of Chicago, for appellees; HAROLD T. HALFPENNY, RICHARD F. HAHN, JAMES F. FLANAGAN, JOSEPH J. NAGLE, and E. S. D. BUTTERFIELD, all of Chicago, of counsel.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

Plaintiffs brought this action in equity seeking a declaratory judgment and injunctive relief against the members of the Illinois Liquor Control Commission (herein referred to as the State Commission) and the Attorney General of the State of Illinois, as counsel

for the Commission. This cause was heard on the complaint, the answer, and the motion of plaintiffs to strike portions of the answer and for judgment on the pleadings. The trial court sustained the motion and entered a declaratory judgment finding that the State Commission has no authority to inquire into the eligibility of an applicant for a retailer's liquor license when such applicant has received a local license, and enjoining the Commission from holding any hearings with respect to the individual plaintiffs or members of the plaintiff associations concerning their eligibility for state licenses. Defendants prosecuted their appeal directly to the Supreme Court (406 Ill. 24) which in an opinion rendered March 22, 1950, transferred the case to this court, saying: "The issue presented does not involve the validity of the State Liquor Control Act as a whole, or any part thereof; only a construction of the act, or a portion thereof, is involved."

It appears from the pleadings that each individual plaintiff has received a local retail license; that each has made application for a state retail liquor license for the year ending July 1, 1950, with a tender of the requisite statutory license fee in accordance with the Liquor Control Act (ch. 43, par. 94–195, Ill. Rev. Stat. 1949 [Jones Ill. Stats. Ann. 68.001 *et seq.*]); and that the State Commission scheduled a hearing for September 28, 1949 for the purpose of determining the qualifications of the individual plaintiffs to receive state licenses, in view of certain alleged gambling activities on the premises of the applicants. It was this hearing and any further hearings the Commission might order which were enjoined.

The principal question involved is whether the Liquor Control Act imposes a mandatory duty on the State Commission to issue a state retail liquor license to any applicant who has received a local license, makes the required application, and tenders the state fee, or

285

whether the State Commission may conduct a hearing for the purpose of inquiring into the eligibility of such applicant.

The Liquor Control Act was enacted in 1934, following the repeal of prohibition. It created a State Commission and local commissions and provided for a dual system of licensing. (Liquor Control Act, ch. 43, par. 94–195, Ill. Rev. Stat. 1949 [Jones Ill. Stats. Ann. 68.001 *et seq.*].)

The duties of the State Commission are outlined in paragraphs 108, 109, 120, 145 and 148 of the Act. Paragraph 108 contains an enumeration of specific powers, which includes among other things the right to call upon the state, counties and municipalities and their police departments for information and assistance; to inspect premises where alcoholic liquors are sold, except that where a local license is required, to inspect the premises solely for the purpose of determining whether the state license has been obtained; to hear and determine appeals from local commissions in accordance with the Act; and in the conduct of any hearings to examine the licensee under oath and to require records; to investigate the administration of laws in relation to the liquor trade in foreign countries and other states and to recommend such amendments to the Act as will serve to further the broad general purposes contained in section 1 of article I. That section provides for the liberal construction of the Act, to the end that the State may be protected and temperance fostered by the sound and careful control of the manufacture, sale and distribution of alcoholic liquors.

Paragraph 109 prohibits the Commission from issuing a retailer's license unless the applicant shall have obtained a local license for the same premises. It then contains this language: "When such person has obtained a local license and has made application to the State Commission in conformity with this Act and paid

286

the license fee provided, it shall be the duty of the State Commission to issue a retailer's license to him.''

Paragraph 120 provides that no license shall be issued by the State Commission to persons not of good character and reputation; persons who have been convicted of a felony; persons who have been convicted of being a keeper or keeping a house of ill fame; and persons who have been convicted of pandering or other crimes or misdemeanors opposed to decency and morality.

Paragraph 145 prescribes the requirements to be contained in an application for a state license. It is to be made under oath and requires the applicant to give in considerable detail not only the information therein specifically set forth, such as the length of time applicant has been in business, but also to state that he has never been convicted of a felony; ''has not been disqualified to receive a license by reason of any matter or thing contained in the Act;'' and ''such other and further information as the State Commission and the local commission may, by rule or regulation not inconsistent with the law, prescribe.''

Paragraph 148 gives the State Commission the right to compel the applicant to submit to an examination and to produce books and records which, in the judgment of the State Commission, are material to the determination of whether the applicant is qualified to receive a license, or whether the premises sought to be licensed are suitable for such purposes.

It is obvious from a review of the foregoing provisions of this law enacted for the regulation of the liquor trade shortly after prohibition, that the legislature had determined to establish a system of strict regulation. It was then well understood that the evils of the trade had induced the passage of the Prohibition Amendment. To prevent a recurrence of those evils, the Act provided for a careful selection of licensees. As

a part of this system, the legislature gave the State Commission broad authority, with certain express limitations, such as that in subparagraph (6) of paragraph 108 with respect to inspection of premises. That power was given to the local commissions and to local police authorities.

The plaintiffs argue in effect that the phrase in par. 109 "in conformity with [the] Act," means that the applicant having properly filled out and sworn to the application, the State Commission must issue a license, and may not inquire into the verity of the application. If we were to hold with the plaintiffs, we would be writing into par. 148 language which would except from the operation thereof all cases in which local licenses had been issued. No such exception is to be found in that paragraph. Nothing in the Act would authorize such an interpretation. On the contrary, the language of the Act itself reveals that where the legislature desired to impose limitations on the State Commission, it did so in clear and explicit language, as in par. 108 with respect to inspection, and in par. 109 with respect to the issuance of retailers' licenses.

It is a cardinal rule in the construction of a statute that the courts look at the language of the whole Act, and if they find in any particular clause an expression not so broad in its import as those used in other parts of the Act, and upon a review of the whole, they can collect from the broader expressions used in other parts, the real intention of the legislature, it is their duty to give effect to the broader expressions. (*Patteson v. City of Peoria,* 386 Ill. 460; *Burke v. Monroe County,* 77 Ill. 610.) We think that a much more reasonable interpretation of par. 109 is that the applicant must not only conform with the requirements of the Act by the filling out of an application, but there must be a factual compliance therewith. For the purpose of determining that, par. 148 may be invoked by the State Commission.

. In the instant case, the Commission has done nothing more than notify the applicants that they would proceed to hold a hearing for the purpose of determining whether they were qualified to receive state retailer's liquor licenses. The Commission has as yet made no decision. If and when it does make a decision adverse to the applicants, they have a simple and speedy remedy. Under par. 154 of the Act, an appeal will lie to the circuit or superior court of Cook county. Under the 1949 Amendment, such reviews are to be made pursuant to the "Administrative Review Act." This, however, was not effective until January 1, 1950. Prior to that time, par. 154 provided for appeal upon notice, and filing of a certified copy of the rule or order with the clerk of the circuit or superior court to which such appeal is taken. Hearings in the circuit or superior court are provided for without formal pleadings, and upon the filing of a certified copy of the order of the Commission, the court is empowered to direct that such filing act as a supersedeas. This gives an adequate and speedy remedy, which could hardly be surpassed in either chancery or law. If, after the granting of a supersedeas, the Commission were to take steps to enforce its order and there was then some question as to whether the supersedeas was fully effective, there would be ample time to consider another remedy.

██ The State has argued that the plaintiff associations are not proper parties. They are not engaged in the liquor business; they are not seeking state licenses; and they have no direct interest in the action. This point is sound, and is fully supported by the case of *Retail Liquor Dealers Protective Ass'n v. Schreiber*, 382 Ill. 454. In that case the Retail Liquor Dealers Protective Association (one of the plaintiffs in this case) alleged in its complaint that it had an interest in the proper regulation of retail liquor sales and asked that certain laws pertaining to said sales be enforced by mandamus. It was there decided that it was not a prop-

er party in a mandamus action. The effect of the injunction in the instant case is similar to that of mandamus, in that it would require the State Commission to issue licenses to the plaintiffs without their being subjected to hearings on the verity of their applications. Thus the plaintiff associations seek to accomplish indirectly what the Supreme Court denied in the case heretofore cited. This has led to the curious result of their procuring an injunction which applies only to members of their associations. The injunction does not protect those in the liquor business not members of their associations. This is a class distinction for which we find no authority in the law.

We do not hold that the State was authorized under the Act to refuse licenses to the applicants. That is a matter to be determined after a hearing on the merits and on a proper appeal, if and when there should be an adverse decision.

For the reasons stated herein, the decretal order of the superior court of Cook county is reversed.

*Decretal order reversed.*

FRIEND and SCANLAN, JJ., concur.